MAIN, Justice.
Regions Bank (“Regions”) appeals from a final judgment dismissing its action against BP P.L.C., BP Corporation North America, Inc., and BP America Inc. (hereinafter referred to collectively as “BP”). We reverse and remand.
I. Facts and procedural history
On April 20, 2010, an explosion and fire occurred aboard the Deepwater Horizon, an offshore-drilling rig, located off the coast of Louisiana. The incident led to a massive discharge of oil into the Gulf of Mexico, which, in turn, spawned an expansive clean-up and response operation by BP and various governmental agencies.
Regions owns coastal real property located in Baldwin County, Alabama. On *3 August 13, 2010, Regions filed this trespass action against BP in the Baldwin Circuit Court. Regions alleged that BP occupied Regions’ property, without authorization, for its spill-response operation; that BP moved equipment and structures onto the property without permission; and that BP erected fences and barriers on the property, again, without permission. Regions further alleged that BP stored hazardous materials and waste on the property and that those hazardous materials and waste damaged the property.
Contemporaneous with Regions’ action, on August 10, 2010, the United States Judicial Panel on Multidistrict Litigation entered an order centralizing all federal actions relating to the Deepwater Horizon incident in the United States District Court for the Eastern District of Louisiana. Eventually, hundreds of cases with thousands of individual claimants were consolidated into the multidistrict litigation (“the MDL”). In 2011, BP and the plaintiffs’ steering committee in the MDL began discussions regarding a class-wide settlement. In early 2012, BP and the plaintiffs’ steering committee reached a settlement agreement relating to economic and property damage. On May 2, 2012, the federal district court in the MDL preliminarily approved the eeonomic-and-property-damage settlement and preliminarily conditionally certified a class for the purposes of settlement. On November 8, 2012, following notice-to the putative class members, an opt-out period, and a fairness hearing, the federal district court entered its final judgment approving the economic- and-property-damage class settlement.'
On April 23, 2015, BP filed a Rule 12(c), Ala. R. Civ. P., “motion to dismiss” Regions’ trespass action on the ground that it was subject to the class-action settlement approved in the MDL and, therefore, that dismissal was warranted on the basis of the doctrine of res judicata.[1] Specifically, BP argued that, because the property damage suffered by Regions was within the geographic area designated by the class settlement and arising from the Deepwater Horizon oil spill, Regions was a class member in the economie-and-property-damage-settlement class. BP contended that, because Regions had not opted out of the class, its trespass claim had been released under the terms of the settlement. On May 12, 2015, the circuit court entered a one-sentence order granting BP’s motion to dismiss. Regions timely appealed.
II. Standard of Review
BP’s motion was styled as a Rule 12(c) “motion to dismiss” for failure to state a claim upon which relief can be granted. In support of its motion, BP attached several exhibits that evidenced the class-wide settlement approved in the MDL. Ordinarily, consideration by the court of materials outside the pleadings converts a motion to dismiss — or a Rule 12(c) motion for judgment on the pleadings — into a motion for a summary judgment. Barry v. The D.M. Drennen & Emma Houston Drennen & Drennen Mem’l Trust of Saint Mary’s Church, 982 So.2d 478, 482-83 (Ala.2007); Rule 12(c), Ala. R. Civ. P. (“If ... matters, outside the pleadings are presented to and not exclud *4 ed by the court, the motion shall be treated as one for summary judgment — ”). Moreover, the doctrine of res judicata was the basis of the motion to dismiss. We have noted that a res judicata defense will typically require evidence outside the pleadings and therefore must ordinarily be raised in a motion for a summary judgment. See Ex parte Scannelly, 74 So.3d 432, 438-39 (Ala.2011).
Here, the circuit court accepted evidentiary material outside the pleadings from BP in support of its motion to dismiss. Regions was provided the opportunity to respond, and it submitted its own evidence in opposition to the motion. In granting BP’s motion on the ground of res judicata, the circuit court necessarily considered materials outside the pleadings concerning the class-action settlement. Thus, BP’s motion was converted to a motion for a summary judgment. Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala.1986) (“[W]here matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment as provided in Rule 12(c), [Ala.] R. Civ. P., regardless of its denomination and treatment by the trial court.”); see also Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 792 (Ala.2007). Accordingly, our standard of review is as follows:
“ ‘We review the trial court’s grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the nonmovant must then present substantial evidence creating a genuine issue of material fact. Id. “We review the evidence in a light most favorable to the nonmovant.” 943 So.2d at 795. We review questions of law de novo. Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330 (Ala.2006).’ ”
Lloyd Noland, 979 So.2d at 793 (quoting Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006)).
III. Analysis
In this case the circuit court concluded that Regions’ claim was due to be dismissed based on the doctrine of res judicata.[2] That doctrine bars a party from asserting a claim when there is: “(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.” Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala.1998). A class-action settlement may serve as a judgment on the merits for res judicata purposes. See Alabama Dep’t of Transp. v. Price, 854 So.2d 59, 63 (Ala.2003). In this case, Regions concedes that if it is bound by the class settlement, the settlement agreement would encompass its trespass claim asserted against BP. Regions, however, contends that it is not bound by the settlement agreement because, Regions argues, it was expressly excluded from the class definition. Thus, only the third element — identity of the parties — is in dispute. Accordingly, the only question before this Court is whether Regions was a member of the economic-and-property-damage-settlement class.
The federal district court’s judgment approving the class-action settlement defined membership in the economic-and-property- *5 damage-settlement class. That definition provides that a person or entity is a member of the class if it incurred certain types of damage within a specified geographical area and did not otherwise fall within certain excluded categories. The definition provides, in pertinent part:
“(a) Class Definition
“Economic and Property Damages Settlement Class shall mean the NATURAL PERSONS and ENTITIES defined in this Section 1, subject to the EXCLUSIONS in Section 2 below. If a person or entity is included within the geographical descriptions in Section 1.1 or Section 1.2, and their claims meet the descriptions of one or more of the Damage Categories described in Section 1.3, that person or entity is a member of the Economic and Property Damages Settlement Class, unless the person or entity is excluded under Section 2:
[[Image here]]
“1.2. Entities. All Entities doing business or operating in the Gulf Coast Areas or Specified Gulf Waters that:
[[Image here]]
“1.2.4. owned or leased REAL PROPERTY in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012.
“1.3 Individuals and Entities who meet the geographical descriptions of Section 1.1 or 1.2 above are included in the Economic Class only if their Claims meet the descriptions of one or more of the Damage Categories described below.
“1.3.1. The following are summaries of the Damage Categories, which are fully described in the attached Exhibits 1A-15:
[[Image here]]
“1.3.1.6, Coastal Real Property Damage Category. Damages alleged by a ’ Costal Real Property Claimant -that meet the requirements set forth in the Coastal Real Property Claim Framework.

(i

“1.3.1.11. Businesses/Employers in Otherwise Excluded Gaming, Banking, Insurance, Funds, Defense Contractors and Developers Industries: As more fully described in Exhibit 16 and Section 5.10 below, businesses and employers in these otherwise excluded industries described in Section 2 may submit Claims only for Coastal Real Property Damage and Wetlands Real Property Damage, but are not entitled to recover under any other aspect of the Settlement.
[[Image here]]
“(b) Exclusions from the Economic and Property Damages Settlement Class Definition
“2.1. Notwithstanding the above, the following individuals and Entities, including any and all of their past and present predecessors, successors, personal representatives, agents, trastees, insurers, reinsurers, indem-nitors, subrogees, assigns, and any other Natural Person, legal or juridical person or Entity entitled to assert any Claim on behalf of or in respect of any such individual or Entity in their respective capacities as such are excluded from the Economic Class.
“2.2. Excluded Individuals or Entities:
[[Image here]]
“2.2.4. The following exclusions are based on the substantive nature of the business, not' the legal or juridical form of that business. *6 Any of the following types of Entity, or any Natural Person to the extent he or she alleges Economic Damage based on their employment by such an Entity, during the Class Period are excluded:
“2.2.4.1. Financial Institutions as identified in the NAICS codes listed on Exhibit 18, which include, by way of example, commercial banks; savings institutions; credit card issuers; credit insurers; factors or other sales finance entities; financial or investment banking entities; lending institutions; real estate mortgage or lending entities; brokers or dealers of securities, commodities, commodity contracts or loans; securities or commodities exchanges; entities serving as custodians, fiduciaries or trustees of securities or other financial assets; or entities engaged in other financial transaction intermediation, processing, reserve or clearinghouse activities, provided, that the following shall not be excluded solely pursuant to this Section 2.2.4.1 unless they are subject to a different exclusion: stand-alone ATMs, credit unions, pawn shops, businesses engaged predominantly in making payday loans or paycheck advances and businesses that sell goods and services and offer financing on these purchases to their customers.”
(Capitalization in original.)
Regions does not dispute that it falls within the relevant geographical description and that its claim is encompassed within one or more of the damage categories of the class definition. Rather, it argues that, as a financial institution, it was expressly excluded from the economic-and-property-damage-settlement class. Regions emphasizes the following language of the opening paragraph of the class definition;
“Economic and Property Damages Settlement Class shall mean the NATURAL PERSONS and ENTITIES defined in this Section 1, subject to the EXCLUSIONS in Section 2 below. If a person or entity is included within the geographical descriptions in Section 1.1 or Section 1.2, and their claims meet the descriptions of one or more of the Damage Categories described in Section 1.3, that person or entity is a member of the Economic and Property Damages Settlement Class, unless the person or entity is excluded under Section 2 — ”
(Capitalization in original; emphasis added.) Regions then points to the following exclusionary provision of Section 2:
“2.1. Notwithstanding the above, the following individuals and Entities ... are excluded from the Economic Class.
“2.2. Excluded Individuals or Entities:
[[Image here]]
“2.2.4. The following exclusions are based on the substantive nature of the business, not the legal or juridical form of that business. Any of the following types of Entity ... are excluded:
“2.2.4.1. Financial Institutions as identified in the NAICS codes listed on Exhibit 18, which include, by way of example, commercial banks; savings institutions; ... provided, that the following shall not be excluded solely pursuant to this Section 2.2.4.1 unless they are subject to a different exclusion: stand-alone ATMs, credit unions, pawn shops, businesses engaged predominantly in making payday loans or paycheck advances and businesses that sell goods and services *7 and offer financing on these purchases to their customers.”
(Emphasis added.) There is no dispute that Regions is the type of financial institution identified in Section 2.2.4.1 of the class definition. Thus, Regions argues that it was expressly and unequivocally excluded from the economic-and-property-damage-settlement class and, that, therefore, the circuit court erred in dismissing its trespass action.
BP, on the other hand, cites the following section of the class definition:
“1.3,1.11. Businesses/Employers in Otherwise Excluded Gaming, Banking, Insurance, Funds, Defense Contractors and Developers Industries: As more fully described in Exhibit 16 and Section 6.10 below, businesses and employers in these otherwise excluded industries described in Section 2 may submit Claims only for Coastal Real Property Damage and Wetlands Real Property Damage, but are not entitled to .recover under any other aspect of the Settlement.”
(Emphasis added.) BP contends that this section makes clear that banks like Regions can possess claims for coastal real-property damage and for wetlands real-property damage that are covered under the settlement. BP argues: “[B]y stating ‘these otherwise excluded industries,’ Section 1.3.1.11 confirms that the exclusion detailed in Section 2 does not impact banks’ claims for Coastal Real Property Damage and Wetlands Real Property Damage.” (BP’s brief, at 19; emphasis in original.) We find this argument unpersuasive.
•The language of the class definition clearly ■ and unambiguously excludes Regions, a commercial bank, from the class. The definition provides that to be part of the class a party must (1) meet the geographic requirements, (2) meet one or more of the damage categories, and (3) not be subject to an exclusion within Section 2 of the definition. Regions is included within an exception in Section 2. Hence, Regions is not a member of the class. To the extent that the language-of Section 1.3.1.11 causes any confusion as to whether an “otherwise excluded industry]” is a part of the economic class, that confusion is cleared up by- Section 2.1, which begins: “Notwithstanding the above, the following individuals and Entities ... are excluded from the Economic Class.” See Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993) (“[T]he use of such a ‘notwithstanding’ clause clearly signals the drafter’s intention that the provisions of the ‘notwithstanding* section override conflicting provisions of any other section.”).
BP argues that this interpretation of the class definition renders Section 1.3.1.11 meaningless or that it would create an impermissible “opt-in” class. We disagree. Section 1.3.1.11 provides that “businesses and employers in ... otherwise excluded industries described in Section 2 may submit Claims only for Coastal Real Property Damage and Wetlands Real Property Damage, but are not entitled to recover under any other aspect of the Settlement.” (Emphasis- added.) This section appears to do no more than give non-class members optional access to the claims-administration framework established as a result of the class settlement. First, the word “may” indicates that claims filed pursuant to Section 1.3.1.11 are merely permissive. See Burgess Mining & Constr. Corp. v. City of Bessemer, 294 Ala. 74, 312 So.2d 24, 26 (1975) (noting that the word “may” normally connotes a permissive character). When read in relation to the clear and mandatory exclusionary language of the class definition (i.e., “subject to the exclusions”; “unless-... excluded under Section 2”; “[njotwithstanding the above, the fol *8 lowing ... are excluded”; “[a]ny of the following ... are excluded”), Section 1.3.1.11cannot reasonably be construed as mandating the inclusion of an “otherwise excluded” entity’s coastal-property-damage claims within the MDL class-action settlement. Second, there is no indication that submission of a claim under Section 1.3.1.11requires class membership. As Regions argues, “nothing in Rule 23[, Ala. R. Civ. P.,] or the case law interpreting it suggests that a settlement framework cannot also serve as a basis of rights for non-class members, such as by creating a claim-processing apparatus that is also made available to non-class members.” (Regions’ reply brief, at 19.) Regions’ proffered interpretation is all the more convincing in light of the fact that there is not a limited settlement fund in the MDL class settlement that would be depleted by non-class member claims. Accordingly, Section 1.3.1.11 may be meaningfully reconciled with the class definition in a way that does not undermine the clear exclusionary language of the definition.
IV. Conclusion
Based on the clear and unequivocal exceptions to the MDL economic-and-property-damage-settlement class, we conclude that Regions was not a member of the settlement class. Therefore, its trespass claim was not adjudicated as part of the MDL class-action settlement. Accordingly, the circuit court erred in dismissing Regions’ action on the ground of res judi-cata. We reverse the judgment of the circuit court and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BOLIN, PARKER, WISE, and BRYAN, JJ., concur.
MURDOCK and SHAW, JJ., dissent.
MOORE, C.J., recuses himself.

. Initially, on February 12, 2013, BP moved to stay the proceedings in Regions' trespass action on the ground that Regions’ claims were included within the claims settled by the economic-and-property-damage class-action settlement approved in the MDL. BP contended that the case was due to be stayed while the order approving the class settlement was on appeal. The Baldwin Circuit Court stayed the trespass action. The class settlement became effective on December 8, 2014, following the exhaustion of all further grounds for appellate review. The Baldwin Circuit Court lifted the stay on January 12, 2015.

. The circuit court did not provide its rationale for granting BP's motion, but res judica-ta was the only ground asserted in the motion.